**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1344**

---

LESLIE ATKINSON,

    Plaintiff - Appellee,

  v.

BRENT GODFREY, In his individual capacity as a law enforcement officer with the Harnett County Sheriff's Office; WAYNE COATS, In his official capacity as Sheriff of Harnett County, North Carolina,

    Defendants - Appellants,

  and

JOHN DOE, as Surety,

    Defendant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:22-cv-00369-WO-LPA)

---

Argued:  January 23, 2024          Decided:  May 2, 2024

---

Before WILKINSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

---

Reversed and remanded in part, dismissed in part by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Rushing join. Judge Wilkinson wrote a concurring opinion.

---

Brian Florencio Castro, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina, for Appellants. Russell Snow Thompson, IV, THOMPSON CONSUMER LAW GROUP, PC, Scottsdale, Arizona, for Appellee.

———————————

2

QUATTLEBAUM, Circuit Judge:

The primary issue in this appeal is whether a law enforcement officer called to the scene of a private repossession of a vehicle is entitled to qualified immunity from a claim that the officer unreasonably seized the vehicle in violation of the Fourth Amendment. Neither the Supreme Court, our Court, the highest court of the state where the conduct occurred nor a consensus of other circuit courts of appeals have determined that conduct similar to that of the officer is unconstitutional. So, the right alleged to be violated was not clearly established. As a result, we reverse the district court's denial of the officer's motion to dismiss based on qualified immunity and remand with instructions to grant.

## I.[1]

### A.

To purchase a 2003 Chevrolet Avalanche, Leslie Atkinson executed a retail installment sales contract that granted the seller a security interest in the vehicle. The seller assigned the sales contract, and the security interest, to Credit Acceptance Corporation. A few years later, Credit Acceptance engaged Primeritus Financial Services to repossess the vehicle. Primeritus, in turn, hired Carolina Repo to conduct the repossession.

---

[1] The facts as described are based on the allegations in the complaint. As this appeal involves an order denying a motion to dismiss, we accept the factual allegations of the complaint as true. *De'lonta v. Johnson*, 708 F.3d 520, 524 (4th Cir. 2013). However, the complaint also contains several irrelevant and inflammatory allegations about one defendant, which the district court described as "completely inappropriate." J.A. 43. Like the district court, we do not credit those inappropriate allegations. *See Fed.* R. Civ. P. 12(f); *Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1436 (4th Cir. 1985); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

3

When a Carolina Repo representative arrived at Atkinson's house to conduct the repossession, he found the vehicle parked by the back door. The Carolina Repo representative backed his tow truck toward Atkinson's vehicle. Noticing the repossession in progress, Atkinson exited her home. Atkinson jumped into her vehicle and attempted to drive off while the Carolina Repo representative "continued backing up [the truck] and slid its tow bar under the [v]ehicle." J.A. 15. This lifted the vehicle's back tires into the air. Concerned for her safety, Atkinson put the vehicle in park. The Carolina Repo representative walked over to her and demanded she exit the vehicle.

After the Carolina Repo representative and Atkinson argued about the repossession, the representative called the Harnett County Sheriff's Office for assistance. The representative asked whether Atkinson had any outstanding warrants. The Sheriff's Office sent Brent Godfrey, a deputy, to Atkinson's home. When he arrived, Godfrey saw Atkinson in the vehicle, the back end of which was still suspended in the air by the Carolina Repo truck's tow bar. Godfrey ordered her out of the vehicle so that the Carolina Repo representative could repossess it. Because she was intimidated by Godfrey, Atkinson got out of the vehicle as requested.

B.

Atkinson sued Godfrey and Sheriff Wayne Coats under 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth and Fourteenth Amendments of the United States

4

Constitution.[2] Relevant here, she alleges Godfrey, in his individual capacity, violated her Fourth Amendment right against unreasonable seizures of property by improperly facilitating Carolina Repo's repossession. Atkinson maintains that despite her objections to the seizure of the vehicle, Godfrey actively took part in its repossession. She alleges Godfrey told her that Carolina Repo was taking the vehicle despite her protests. She also contends that Coats, in his official capacity as the sheriff and final policy maker of the sheriff's office, failed to train officers and created policies and customs that deprived her of the Fourth Amendment's protection against unreasonable seizures of property.

Godfrey and Coats moved to dismiss Atkinson's § 1983 claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They asserted (1) that Atkinson's § 1983 claim should be dismissed because she did not allege facts showing they acted under color of law, (2) that Godfrey was entitled to qualified immunity and (3) that, without an underlying constitutional violation, Atkinson failed to bring an actionable claim against the Sheriff's Office through Coats in his official capacity. The district court denied the motion, finding it could not determine as a matter of law (1) that Godfrey's actions did not constitute state action, (2) that Godfrey was entitled to qualified immunity and (3) that the Sheriff's

---

[2] Atkinson also sued Credit Acceptance, Primeritus, Carolina Repo and John Doe, as Surety, alleging violations of various debt collection statutes, and the Uniform Commercial Code. The claims against all defendants—except the § 1983 claim (Count X of the complaint) against Godfrey and Coats—have been dismissed in favor of arbitration. Also, the district court noted that while Atkinson mentioned a violation of the Fifth Amendment in her § 1983 count for unlawful seizure against Godfrey and Coats, it concluded that the allegation was immaterial to the analysis and appeared to have been abandoned in the briefing. Neither party challenges this finding on appeal.

Office's liability could be ruled out. Godfrey and Coats timely appealed the district court's

denial of their motion.

## II.

Before addressing the merits of the defendants' appeal, we consider our federal

appellate jurisdiction.[3] Our jurisdiction is generally limited to the review of final decisions.

28 U.S.C. § 1291. Generally, the denial of a motion to dismiss does not constitute a "final

decision" and, therefore, most of the time is not the proper basis of an appeal. *Davis v. City

of Greensboro*, 770 F.3d 278, 281 (4th Cir. 2014). But under the collateral order doctrine,[4]

"[w]hen a district court denies a motion to dismiss that is based on qualified immunity, . . .

the action is a final order reviewable by this court" to the extent it turns on an issue of law.

*Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997); *Davis*, 770 F.3d at 282.

---

[3] The defendants moved to dismiss under Rule 12(b)(1) as well as under Rule 12(b)(6). Construing the complaint in the light most favorable to Atkinson, the district court concluded that she had alleged active participation by Godfrey sufficient to find state action and, thus, subject matter jurisdiction. It then proceeded to address the nature of Godfrey's involvement in conjunction with its Rule 12(b)(6) analysis. We too have "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Without addressing whether state action is a matter of subject matter jurisdiction or an essential element to a § 1983 claim, we agree with the district court and conclude that we have subject matter jurisdiction based on the allegations in the complaint. Even so, as described below, we ultimately conclude Godfrey is entitled to qualified immunity.

[4] "Under the collateral order doctrine, an order is final for purposes of § 1291, even if it does not terminate proceedings in the district court, so long as it conclusively determines the disputed question, resolves an important issue completely separate from the merits of the action, and would be effectively unreviewable on appeal from a final judgment." *Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 229 (4th Cir. 2002).

6

We begin with our jurisdiction to consider the defendants' challenge to the district court's order denying the motion to dismiss the claim against Godfrey. The defendants' motion to dismiss accepts Atkinson's factual allegations from the complaint as true but contends that, even so, Godfrey is entitled to qualified immunity as a matter of law. Thus, since the defendants' challenge to the district court's denial of qualified immunity to Godfrey turns on a legal question, we have jurisdiction to review it.

## III.

With our jurisdiction to review the district court's ruling on Atkinson's § 1983 claim for unlawful seizure against Godfrey established, we turn to his assertion of qualified immunity.[5]

## A.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The immunity balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*,

---

[5] "We review de novo the denial of a motion to dismiss based on qualified immunity, accepting as true the facts alleged in the complaint and viewing them in the light most favorable to the plaintiff." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006).

7

555 U.S. 223, 231 (2009). The protection applies regardless of whether the government official's error is a mistake of law, a mistake of fact or a mistake based on mixed questions of law and fact. *Id.* It gives "government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (internal quotes and citation omitted). While qualified immunity provides a defense to liability, it is also intended to free officials from litigation concerns and disruptive discovery. *Ashcroft v. Iqbal,* 556 U.S. 662, 685 (2009).

In reviewing a district court's decision rejecting a defendant's assertion of qualified immunity, we apply a two-step analysis. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001)*.* Under the first prong of the analysis, we ask "whether a constitutional violation occurred." *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). The plaintiff bears the burden of proof on this question. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). Under the second prong, we ask whether the right at issue was "clearly established" at the time of the events in question. *Id.*; *see also Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014). The officer bears the burden on this question. *Stanton*, 25 F.4th at 233.

We may address these questions in the order that would best facilitate the fair and efficient disposition of the case. *Pearson*, 555 U.S. at 236. That means that we may grant qualified immunity on the ground that the purported right was not clearly established without resolving the "often more difficult question whether the purported right exists at all." *Reichle*, 566 U.S. at 664. The flexibility in approaching the questions "comports with

8

[the Supreme Court's] usual reluctance to decide constitutional questions unnecessarily."

*Id.*

### B.

Exercising the analytical discretion permitted for considering qualified immunity, we begin with prong two. Under that prong, an officer is entitled to qualified immunity if, at the time of the challenged conduct, the law did not clearly establish that the officer's conduct was unconstitutional. *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018).

Atkinson claims Godfrey violated her Fourth Amendment right, made applicable to the states under the Fourteenth Amendment, to be free from unreasonable seizures. She contends that, during Carolina Repo's repossession efforts, Godfrey crossed the line from keeping the peace into actively participating.

The Fourth Amendment forbids unreasonable searches and seizures.[6] But the defendants contend that the Fourth Amendment does not apply here, asserting that Carolina Repo, a private company, repossessed the car and that Godfrey's involvement was de minimis. And it is true that the Fourth Amendment only proscribes government action. It does not apply "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge

---

[6]Applicable to the states via the Fourteenth Amendment, the Fourth Amendment relevantly provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

9

of any governmental official." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

Typically, government officials are not required to answer for private parties' actions. *See Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011). But in *Soldal v. Cook County*, 506 U.S. 56 (1992), the Supreme Court recognized the potential for law enforcement to become so enmeshed in a forceable seizure conducted by a private party to constitute a violation of the Fourth Amendment. Relying on *Soldal*, Atkinson claims the law clearly establishes that law enforcement officials violate the Fourth Amendment by actively participating in a repossession.

But even if we assume, without deciding, that principle is clearly established as a general matter, we must decide whether it is specific enough to foreclose Godfrey's qualified immunity defense on its second prong. That is because "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she is doing violates that right." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (cleaned up). The way in which an alleged right is described matters. "[C]ourts must not 'define clearly established law at a high level of generality . . . .'" *Wesby*, 583 U.S. at 63–64 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Defining the right at a high level of generality, "avoids the crucial question whether the offic[er] acted reasonably in the particular circumstances that he or she faced." *Id.* (quoting *Plumhoff*, 572 U.S. at 779). Instead, we must identify the specific right the plaintiff alleges was infringed at a "high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 250–51 (4th Cir. 1999).

Thus, for Atkinson's right to be clearly established, there must be case law not just about the general principle that law enforcement officials violate the Fourth Amendment by actively participating in a wrongful repossession; the law must establish that conduct similar to Godfrey's is unconstitutional. Although a case directly on point is not required, existing precedent "must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quoting *Pauly*, 580 U.S. at 79). And again, the clearly established right must be viewed with reference to the particular facts of the case. *Pauly*, 580 U.S. at 79. "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract facts." *Id.* (cleaned up). In the end, the key inquiry is whether "the law provided 'fair warning' that [the officer's] conduct was unconstitutional." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Applying these principles, the right Atkinson asserts is too general to have clearly established that Godfrey's conduct was unconstitutional at the time of the repossession. Merely knowing that law enforcement officials can violate the Fourth Amendment by actively participating in a wrongful repossession would not put Godfrey on notice that his particular conduct was unconstitutional. To the contrary, it begs the critical question—what conduct crosses the line in a private repossession from peacekeeping to actively participating?

To answer that question, we must see whether the law clearly established that conduct similar to that of Godfrey was unconstitutional. And for that inquiry, we consider

11

decisions of the Supreme Court, this Court and the highest court of the state in which the case arose. *Edwards*, 178 F.3d at 251.[7]

Beginning with the Supreme Court, Atkinson claims *Soldal* clearly establishes the right she asserts. We disagree. That case involved a landlord who sought to evict a family by removing their trailer home from a rented lot in a mobile home park. *Soldal*, 506 U.S. at 57–58. Under state law, a tenant could not be removed absent a judgment of eviction. *Id.* at 58. Instead of waiting for the legal process underway to run its course, the landlord notified the sheriff's department that it intended to remove the trailer home from the park and requested the sheriff's department's assistance to "forestall any possible resistance." *Id.* A sheriff's deputy arrived at the home with employees of the park owner. The employees then "wrench[ed] the sewer and water connections off the side of the trailer home, disconnect[ed] the phone, [tore] off the trailer's canopy and skirting, and hook[ed] the home to a tractor." *Id.* The sheriff's deputy also told the tenant that he was there to make sure that the tenant did not interfere with the eviction work. *Id.* Another deputy who later arrived on the scene refused to accept any criminal trespass complaint from the tenants despite knowing that the landlord did not have an eviction order. *Id.* at 58–59.

The Supreme Court held that the unlawful disposition of the home was a "seizure invoking the protection of the Fourth Amendment." *Id.* at 61. But it did not decide whether the seizure violated the Fourth Amendment, noting that was "a different question that

---

[7] To be sure, our precedent refers to decisions from the highest court of the state in which the case arose. But we have not explained how state court decisions might clearly define federal constitutional rights. This appeal does not require us to answer this question, so we do not address it.

12

requires determining if the seizure was reasonable," which was an "inquiry [that] entails the weighing of various factors" not before the Court. *Id.* at 61–62. Thus, *Soldal* establishes the general principle that forcible removal of property carried out by a private party but supported by government officials can constitute a "seizure" within the meaning of the Fourth Amendment. But in doing so, the Court noted the unique circumstances in that case, which it described as no "'garden-variety' landlord-tenant or commercial dispute." *Id.* at 72. The Court explained that the complaint alleged "that [law enforcement], acting under color of state law, dispossessed the Soldals of their trailer home by physically tearing it from its foundation and towing it to another lot." *Id.*

The Court also limited the scope of its decision, recognizing that "numerous seizures of this type will survive constitutional scrutiny," and noting the need to balance carefully governmental and private interests in determining reasonableness. *Id.* at 71; *see also id.* (noting that if the officers were acting pursuant to a court order, for example, showing unreasonableness under the facts presented would be a "laborious task indeed").

So, while *Soldal* may support the general principle Atkinson advances—that law enforcement officials may violate the Fourth Amendment by actively participating in a wrongful repossession—that principle is too broad to clearly establish that Godfrey's conduct was unconstitutional. And from a factual standpoint, *Soldal* is very different from the facts Atkinson alleges here. It involved an eviction from a mobile home park, not the repossession of a car. And unlike Godfrey's conduct, the *Soldal* deputies worked with the mobile park owners from the beginning of the eviction efforts to the end. Because the facts

13

in *Soldal* greatly differ from the facts here, that decision would not have provided fair warning to Godfrey that his conduct was unconstitutional.

Atkinson also contends the Supreme Court's decision in *Fuentes v. Shevin*, 407 U.S. 67 (1972), clearly established that Godfrey's conduct violated her Fourth Amendment rights. But her reliance on that case is even less compelling. There, the Court held that certain state statutes authorizing the seizure of property without prior notice and an opportunity to be heard violated the Fourteenth Amendment's Due Process Clause. *Id.* at 90–92. So, *Fuentes* does not even involve the same alleged unlawful seizure that we consider here. What's more, *Fuentes* does not address what a law enforcement officer is lawfully permitted to do when he arrives on the scene of a repossession in progress. *Id.* at 96 n.32 (characterizing its holding as narrow and declining to reach the question of whether the statutory procedures violated the Fourth Amendment made applicable to the states by the Fourteenth Amendment). Therefore, it would not have placed Godfrey on notice that his conduct violated the Fourth Amendment.

With no Supreme Court authority, we would typically look to our Court's precedent and to decisions of the Supreme Court of North Carolina. But the parties agree that neither we nor the Supreme Court of North Carolina have addressed the issue presented here.

Absent decisions from the Supreme Court, our Court and the Supreme Court of North Carolina, we may look to a "'consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). But none exists here. Other circuits that have addressed this question for the most part agree that "officers are not state actors

14

during a private repossession if they act only to keep the peace, but they cross the line if they affirmatively intervene to aid the repossessor." *Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004). But there is no consensus on where to draw that line. As recognized by the Second Circuit, "no bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene of a repossession become state action in aid of the repossession." *Barrett v. Harwood*, 189 F.3d 297, 302 (2d Cir. 1999). In fact, decisions from other circuit courts are not consistent at all about when an officer's conduct constitutes assistance in the repossession as opposed to peacekeeping. *Compare, e.g.*, *id.* at 302–03 (recognizing the spectrum of police involvement at the scene of a repossession, and finding no state action where an officer was dispatched for the purposes of maintaining the peace and informed the plaintiff after he struck tow truck operator that "if you start any trouble here, you'll be going in the back seat of my car"), *with, e.g.*, *Hensley v. Gassman*, 693 F.3d 681, 691 (6th Cir. 2012) (finding indicia of state action where the officers arrived at the property with the repossessor, ordered one plaintiff not to stand between tow truck and vehicle, ignored both plaintiffs' protests and demands to leave the property and told one plaintiff that the repossessor was taking the vehicle). So, decisions from our sister circuits do not "place[] the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The district court properly recognized that our Court has not addressed the question presented here. Even so, it found the Western District of Virginia's decision in *Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915 (W.D. Va. 2016), persuasive. But *Goard* is a district court decision from a different state. District court opinions, unlike those from the courts

15

of appeals, do not necessarily settle constitutional standards with respect to claims of qualified immunity. *Booker*, 855 F.3d at 545 (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)). Such opinions do not have precedential value. *Id.* And while *Goard* relies on *Soldal* and *Fuentes*, we have already explained that neither of those cases provides notice of a violation of a clearly established right here.

Lastly, Atkinson argues that the combination of *Soldal*, *Fuentes* and North Carolina case law makes clear that the right she alleges was clearly established. But that is not how the second prong of the qualified immunity analysis works. We do not decide whether a right is clearly established like a customer in a buffet line selectively picking items and declining others to come up with the ideal meal. And the reason for this should be clear. The second prong of the qualified immunity analysis examines if the law fairly warned an officer that his conduct violated the Constitution. Mixing and matching parts of dissimilar decisions does not provide fair warning.

To sum up our qualified immunity analysis, neither the Supreme Court, our Court nor North Carolina's high court has provided fair warning that conduct like Godfrey's was unconstitutional. Nor is there a consensus from other courts of appeals that would have provided fair warning to a reasonable officer standing in Godfrey's shoes. Godfrey is, therefore, entitled to qualified immunity.

16

IV.

We turn next to the defendants' appeal of the district court's order denying the motion to dismiss the claim against Coats. And we start, as we must, with whether we have appellate jurisdiction over that claim.

To begin, interlocutory review of a denied qualified immunity claim does not automatically confer jurisdiction over all other issues in the case. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 43–51 (1995). Atkinson sued Coats in his official capacity, not his individual capacity. Official capacity suits are treated as suits against the municipality, *Davison v. Randall*, 912 F.3d 666, 688 (4th Cir. 2019), so qualified immunity does not apply to such claims, *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) ("Unlike public officials, municipalities do not enjoy qualified immunity."). That is why "claims against municipalities are measured against current law, without regard to whether municipalities' obligations were clearly established at the time of the alleged violations." *Id.* Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." In other words, "a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, a municipality is only liable under § 1983 for following a custom, policy or practice by which local officials violate a plaintiff's constitutional rights. *Owens*, 767 F.3d at 402 (citing *Monell*, 436 U.S. at 694).

Normally, Coats' appeal would not be subject to immediate interlocutory review. But pendent appellate jurisdiction is available when an issue is "(1) inextricably

17

intertwined with the decision of the lower court to deny qualified immunity or (2) consideration of the additional issue is necessary to ensure meaningful review of the qualified immunity question." *Bellotte v. Edwards*, 629 F.3d 415, 427 (4th Cir. 2011).

One way we might have pendent jurisdiction over the defendants' appeal of the district court's rulings on the claim against Coats is if our disposition of the claim against Godfrey necessarily resolved the claim against Coats. On that point, it is true that "a municipality cannot be liable in the absence of a constitutional violation by one of its agents." *Altman v. City of High Point*, 330 F.3d 194, 207 n.10 (4th Cir. 2003); *see also Evans v. Chalmers*, 703 F.3d 636, 654 & n.11 (4th Cir. 2012) ("Because we hold that all plaintiffs failed to state predicate § 1983 claims against the individual officers, we must also hold that all plaintiffs have failed to state supervisory liability, *Monell* liability, and 'stigma-plus' claims.").

But we have not concluded that Godfrey did not violate Atkinson's Fourth Amendment rights. Instead, under prong two of the qualified immunity analysis, we held that the constitutional rights Atkinson claimed Godfrey violated were not clearly established at the time of Godfrey's conduct. And since we have not held that Godfrey did not violate Atkinson's constitutional rights, our disposition of the claim against Godfrey does not necessarily resolve the claim against Coats. While it may be less likely that a municipality may be found liable when the constitutional terrain was as murky as that here, the rules of pendent jurisdiction counsel staying our hand. For that reason, we decline to exercise jurisdiction over the appeal with respect to Coats as the issues it presents are not

18

inextricably intertwined with our resolution of the qualified immunity issues.[8] *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (pendent appellate jurisdiction is an exception of limited and narrow application).

V.

Accordingly, we reverse the district court's order and remand with instructions to grant the defendants' motion to dismiss with respect to the claim against Godfrey. We dismiss the appeal with respect to the claim against Coats.

*REVERSED AND REMANDED IN PART; DISMISSED IN PART*

---

[8] In contrast, we have exercised pendent appellate jurisdiction for *Monell* claims where we ruled at prong one of the qualified immunity analysis that no constitutional violation occurred. *See e.g., Evans*, 703 F.3d at 654 n.11; *Altman*, 330 F.3d at 207 n.10; *see also Saunders v. Sheriff of Brevard Cnty.*, 735 F. App'x 559, 563 (11th Cir. 2018) ("[I]f officers violated a plaintiff's constitutional rights but those rights were not 'clearly established,' then *Monell* liability could survive even though qualified immunity would preclude individual liability."). Of course, our refusal to exercise jurisdiction over the *Monell* claim should not be construed to suggest any view as to its merits.

WILKINSON, Circuit Judge, concurring:

Municipal budgets are strained. Public schools face deferred maintenance costs. Local roads need repair. The fire department may need new equipment. The police department may be understaffed. Teachers may be underpaid. Sanitation workers may deserve a raise. The perennially starved parks and recreation department may welcome an infusion.

Municipal liability is not easily established. As the majority makes clear, the Supreme Court in *Monell* explicitly rejected *respondeat superior* liability, meaning that municipal liability in turn does not follow a ruling on qualified immunity as a matter of course. Municipalities, of course, do not have qualified immunity. Yet the whole idea of fair notice that lies at the heart of qualified immunity for individuals need not be wholly abandoned when policymakers are concerned. In other words, it is not immediately apparent why the municipal fisc should be burdened in the absence of any ascertainable federal standards by which municipal policies can be gauged. While municipal bodies may have more time or legal advice at their disposal than individual officials do, they are also uniquely taxed with devising workable and even novel solutions to their own sets of pressing problems.

The majority notes, "While it may be less likely that a municipality may be found liable when the constitutional terrain was as murky as that here, the rules of pendent jurisdiction counsel staying our hand." Maj. Op. at *18. I agree with that statement and I thus concur in Judge Quattlebaum's excellent opinion for the majority.

20