**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1511**

BROOKE N. SOMERS,

        Plaintiff – Appellant,

v.

ANTHONY DEVINE; TOWN OF ELKTON, MARYLAND; JOHN ROUSH; ROBERT JOSEPH BUCKLEY; BOARD OF EDUCATION OF CECIL COUNTY, MARYLAND; CECIL COUNTY, MARYLAND,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland at Baltimore. Brendan A. Hurson, District Judge.  (1:23−cv−00102−BAH)

Argued:  January 31, 2025

Decided:  March 24, 2025

Before WILKINSON, HEYTENS, and BENJAMIN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion in which Judge Heytens and Judge Benjamin joined.

Ray M. Shepard, THE SHEPARD LAW FIRM, LLC, Pasadena, Maryland, for Appellant. Raymond Robert Mulera, LOCAL GOVERNMENT INSURANCE TRUST, Hanover, Maryland, for Appellees.

WILKINSON, Circuit Judge:

The plaintiff here challenges the district court's grant of qualified immunity to a police officer on various First, Fourth, and Fourteenth Amendment claims arising out of plaintiff's arrest at a local school board meeting. An objectively reasonable officer could have found probable cause for the arrest after plaintiff refused to obey lawful orders designed to quell disruption of the meeting. We thus hold that defendant is entitled to qualified immunity with regard to plaintiff's retaliatory arrest, unlawful arrest, and malicious prosecution claims. Likewise, an objectively reasonable officer could have applied the force that the arresting officer did in the face of plaintiff's resistance. Defendant is accordingly entitled to qualified immunity with regard to plaintiff's excessive-force claims. We therefore affirm the judgment of the district court.

I.

Plaintiff-appellant Brooke N. Somers is a resident of Cecil County, Maryland. On February 9, 2022, she arrived at an administrative building in Elkton, Maryland, to attend a meeting of the Board of Education of Cecil County ("Board"). J.A. 12, 251. The present case arises from Somers' behavior at the meeting and her subsequent arrest.

A.

Upon arriving outside the door of the room in which the Board meeting was taking place, Somers was confronted by defendant-appellee Officer Anthony Devine, a member of the Elkton Police Department, and John Roush, the Director of Student and School Safety for Cecil County Public Schools. Roush and Officer Devine informed Somers that

2

she could not enter the meeting without wearing a mask. *See* J.A. 132. At the time, Maryland state emergency regulations pertaining to the COVID-19 pandemic required that "individuals [] cover their nose and mouth with a face covering while inside a school facility," unless they fell under one of thirteen exemptions. Md. Code Regs. § 13A.01.07.03 (repealed Feb. 24, 2022). One of these exemptions covered individuals with "a physical or mental impairment documented by a physician as preventing the person from safely wearing a face covering." *Id.* § 13A.01.07.03(B)(3).

Somers claimed that she had such documentation from her doctor, although she later admitted she routinely wore a mask while demolishing concrete or sanding. J.A. Digit. Media Vol., Ex. 4, Officer Devine Body Camera Footage at 18:09:26 [hereinafter Devine Body Cam]. She retrieved an eight-month-old nurse practitioner's letter, which specified that "[Somers] states that she is unable to wear [a] mask due to difficulty breathing when wearing [a] mask and it is also causing her anxiety. Her symptoms are exacerbated due to her pregnancy. She does have a documented history of anxiety and depression." *Somers v. Devine*, 732 F. Supp. 3d 445, 456 (D. Md. 2024).[1] While Somers was out of earshot, Officer Devine commented to Roush, "I don't think the note is sufficient," Devine Body Cam at 18:04:57, and later explained to Somers that the letter only parroted what she had self-reported to her clinician and did not contain any guidance from the physician specifically, *id.* at 18:07:41. The officer directed that Somers could sit with other unmasked individuals in the lobby of the building and watch the meeting on a televised livestream. *Id.* at 18:04:20.

---

[1] Somers was no longer pregnant at the time of this incident. *See* J.A. 252 n.4.

Somers responded negatively to these instructions, asking Officer Devine, "Why are you so devoted to that muzzle?" *id.* at 18:07:53, and declaring that the masking rule was "not a law, it's a mandate," *id.* at 18:03:59. She ended up taking a seat in the lobby. At least one of the other unmasked individuals seated near her expressed that he had attempted to enter the meeting as an act of protest—a "push" against the masking policy. *Id.* at 18:45:41.

Approximately thirty-five minutes later, Officer Devine, who was then in the meeting room, heard noise emanating from the lobby. J.A. 134. After seeing meeting participants look at the door leading to the lobby, *see, e.g.*, Devine Body Cam at 18:41:17, Officer Devine exited the meeting and told all the individuals gathered in the lobby to "keep the volume down a little bit" because "you are starting to disrupt the back of the meeting," *id.* at 18:41:28. Somers responded, "No," *id.* at 18:41:33, which Officer Devine interpreted as a refusal to obey a "lawful order" to decrease the volume of her discourse, *id.* at 18:43:58. He thereupon ordered her to "leave" and "get out." Somers responded "no" three more times, and Officer Devine finally indicated that "if you don't leave the building, you are going to jail." Somers replied that she was "peacefully refusing to leave," and when a third party asked if Officer Devine was actually going to make good on his promise to arrest, Somers declared, "Do it." *Id.* at 18:41:34-18:41:48.

Officer Devine placed his hands on Somers' wrists and told her, "You are under arrest, stand up." She remained seated and verbally refused the order to stand up multiple times, after which Officer Devine made it clear to Somers that she was "resisting arrest." Somers persisted, telling Officer Devine that "you are going to have to lift me out of this

4

chair." He did so, and she ended up on the ground on her back. Office Devine ordered her to roll over so that he could properly handcuff her, and Somers again refused. Upon this refusal, Officer Devine rolled her onto her chest, pushed both hands behind her back, and applied pressure to her back for approximately one minute to keep her still. *Id.* at 18:41:51-18:43:19. Somers repeatedly indicated that Officer Devine was "hurting" her, *id.* at 18:42:43, but, during her brief confinement, she later told another officer that she had not been hurt despite being thrown to the ground, J.A. Digit. Media Vol., Ex. 5, Officer Brown Body Camera Footage at 19:11:27 [hereinafter Brown Body Cam].

Later in the evening, Officer Devine transported Somers from the Elkton Police Department to the District Court Commissioner's Office in the Cecil County Courthouse. While preparing to depart, Officer Devine explained that Maryland law required that Somers wear a mask in the courthouse. Devine Body Cam at 23:29:30. Upon their arrival, Somers again refused to don a mask and told Officer Devine to "forcibly put it on [her]." *Id.* at 23:38:08-23:38:51. Office Devine put the mask on Somers, and she immediately pulled it below her nose and mouth. A minor scuffle then occurred when Officer Devine attempted to adjust the mask, and Somers immediately pulled away. He grabbed Somers' jacket to control her movement and ensure that he could properly mask her. She continued to resist and eventually dropped into a sitting position on the floor. *Id.* at 23:38:51-23:39:16. The Commissioner then came out and instructed Somers that she could either wear a mask or conduct the hearing via telephone. Somers finally put on the mask. *See* J.A. 115.

Somers was subsequently charged with six counts of criminal offenses: (1) willful disturbance of school activities; (2) trespassing on school property; (3) disturbing the public peace; (4) failure to obey a lawful order; (5) resisting arrest; and (6) trespassing on private property. J.A. 70. The District Court for Cecil County convicted Somers on the third and fourth count, but she was later acquitted of these crimes upon appeal to the Circuit Court for Cecil County. J.A. 72, 116.

B.

On January 13, 2023, Somers filed a complaint in the United States District Court for the District of Maryland against Devine; Roush; Cecil County; the Town of Elkton; the Board of Education of Cecil County; and Robert Buckley, the Associate Superintendent for Administrative Services for Cecil County Public Schools. J.A. 10. In her amended complaint, Somers raised a laundry list of state- and federal-law claims. *See* J.A. 73-106. The district court declined to exercise supplemental jurisdiction over any of Somers' state-law claims. *Somers*, 732 F. Supp. 3d at 475-76. All six of Somers' federal-law claims were brought pursuant to 42 U.S.C. § 1983: (1) denial of the right to free speech in violation of the First Amendment ("Count I"), (2) denial of the right to free assembly in violation of the First Amendment ("Count II"), (3) retaliatory arrest for First Amendment protected speech ("Count III"), (4) unlawful arrest in violation of the Fourth Amendment ("Count IV"), (5) use of excessive or unreasonable force in violation of the Fourth and Fourteenth Amendments ("Count V"), and (6) malicious prosecution in violation of the Fourth Amendment ("Count VI"). J.A. 82-92, 210-11.

The defendants filed motions to dismiss, or in the alternative, motions for summary judgment. *See, e.g.*, J.A. 108. The district court found that the Town of Elkton could not be held municipally liable for Officer Devine's actions and thus dismissed the claims pertaining to the Town. *Somers*, 732 F. Supp. 3d at 463-64. The court also dismissed the claims against all other defendants except for Officer Devine on the basis that Somers failed to state claims against these individuals and entities. *Id.* at 464-69.

While the district court concluded that Somers did properly state claims against Officer Devine, the court granted summary judgment on all counts, finding that Officer Devine was entitled to qualified immunity for the actions he took on February 9, 2022. *Id.* at 469-75. The present appeal only pertains to Counts III-VI, and thus we confine our discussion to these issues.

With regard to Counts III and IV, the district court found that Somers lacked a "clearly established right" not to be arrested when refusing to comply with (1) a public-health regulation, (2) an officer's lawful order to diminish a conversation's volume, and later, (3) an officer's repeated order to leave the premises. *Id.* at 470-71. Qualified immunity thus applied because an objectively reasonable officer could have believed there was probable cause to arrest Somers. *Id.* at 471. Furthermore, the district court held that because malicious prosecutions require an absence of probable cause, Officer Devine was also entitled to qualified immunity on Count VI. *Id.* at 475. Finally, with regard to the excessive-force claims in Count V, the district court found that qualified immunity applied because "any reasonable jury viewing the video footage of the incident could see that Devine was nothing but reasonable in this interaction." *Id.* at 474.

7

On May 31, 2024, Somers filed her notice to appeal the district court's grant of summary judgment on Counts III-VI. J.A. 9.

## II.

We review *de novo* a district court's grant of summary judgment on the basis of qualified immunity. *See Johnson v. Robinette*, 105 F.4th 99, 113 (4th Cir. 2024). Summary judgment is appropriate where there remains "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" when viewing the facts in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56; *see Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Summary judgment is often appropriate in the context of qualified immunity because "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Indeed, the Supreme Court and our circuit have consistently held that the purposes of qualified immunity are often advanced by expedited resolutions lest officers lose protection from "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [them] in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *see Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982). Qualified immunity is of little value if a plaintiff may subject an officer to the rigors, publicity, and "uncertainties of standing trial." *Gooden v. Howard Cnty.*, 954 F.2d 960, 965 (4th Cir. 1992) (en banc); *see Mitchell*, 472 U.S. at 526.

Under 42 U.S.C. § 1983, public officials are liable for "the deprivation of [an individual's] [] rights, privileges, or immunities secured by the Constitution and laws,"

8

while acting under the color of the state law. Courts must balance this need for public accountability with the twin goal of "shield[ing] [public officials] from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 806; *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity does not permit law enforcement to act with impunity, throwing our nation's constitutional commitments to the winds of individual discretion. But it does require fair notice of the landscape of the law to those who must enforce it. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("Qualified immunity . . . ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.").

From time immemorial, our common-law tradition has upheld the maxim *ignorantia legis neminem excusat*—ignorance of the law is no excuse. *See, e.g.*, Letter from Thomas Jefferson to André Limozin (Dec. 22, 1787), *in* 12 THE PAPERS OF THOMAS JEFFERSON 450-51 (Julian P. Boyd, ed. 1955) ("[I]gnorance of the law is no excuse in any country. If it were, the laws would lose their effect, because it can be always pretended."); *Screws v. United States*, 325 U.S. 91, 129 (1945) (Rutledge, J., concurring). However, to be truly ignorant of a law, that law must be properly defined, its contours comprehensible to the rational men and women bound by it.

In short, clarity is key. Officers are immune from liability "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have been known." *Harlow*, 457 U.S. at 818 (emphasis added). This standard leads to two questions: (1) whether any right was violated, (2) whether that right was "clearly established" at the time of the alleged violation. *See Ashcroft v. al-Kidd*, 563 U.S.

9

731, 735 (2011). These questions need not be answered sequentially, and if either is determined in the negative, the claims must be dismissed. *See Pearson*, 555 U.S. at 240-42. Indeed, as a matter of constitutional avoidance, we often grant qualified immunity based on a determination "that the purported right was not clearly established without resolving the 'often more difficult question [of] whether the purported right exists at all.'" *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Determining whether a right is "clearly established" cannot be done in isolation from the perceived facts of the case in which the immunity is claimed. Indeed, to conclude that a right is "clearly established," we must inquire whether an objectively reasonable officer in the defendant's shoes would "understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. We examine the alleged right at a "high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). A plaintiff cannot simply assert that because all public officials understand that the First Amendment protects free speech, any action which burdens any speech violates a "clearly established" right. The citation of commonplace generalities would allow plaintiffs to game the system, "convert[ing] the rule of qualified immunity . . . into a rule of virtually unqualified liability." *Anderson*, 483 U.S. at 639. But, by the same token, a rejection of excessive generality does not equate to an insistence on exactitude. Few situations are *exactly* the same and to require that plaintiffs produce identical precedent would transform qualified immunity into a grant of absolute immunity for defendants.

10

Against this backdrop, we shall proceed to examine the claims against Officer Devine.

## A.

Counts III, IV, and V—retaliatory arrest, unlawful arrest, and malicious prosecution—all implicate effectively the same right: the right not to be arrested and prosecuted after refusing to comply with (1) a public-health regulation, (2) an officer's lawful order to lower a conversation's volume, and subsequently, (3) an officer's repeated order to leave the premises. *See Somers*, 732 F. Supp. 3d at 470-71. And whether this right is "clearly established" turns on the question of whether Officer Devine was objectively reasonable in believing that probable cause existed to arrest Somers. Indeed, the presence of probable cause defeats retaliatory arrest, unlawful arrest, and malicious prosecutions claims alike. *See Nieves v. Bartlett*, 587 U.S. 391, 405-07 (2019) (holding that retaliatory arrest claims require an absence of probable cause except for the "narrow" exception when plaintiff is arrested and other "similarly situated individuals" are usually not, such as for offenses like jaywalking); *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017) (acknowledging that lawful arrests require probable cause); *Harris v. Town of S. Pines*, 110 F.4th 633, 639 (4th Cir. 2024) (acknowledging that malicious prosecution claims require an absence of probable cause); *see also Reichle*, 566 U.S. at 664-65 ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . .").

11

Here we have no doubt that a rational officer could have found probable cause to arrest Somers. Officer Devine gave a lawful directive to Somers and other occupants of the lobby to "keep the volume down a little bit." This is unquestionably an appropriate "time, place, or manner" restriction on protected speech. *See McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Such a restriction must (1) be content neutral, (2) be "narrowly tailored to serve a significant governmental interest," and (3) preserve "ample alternative channels for communication." *Hulbert v. Pope*, 70 F.4th 726, 734 (4th Cir. 2023) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Officer Devine's order focused not on the content of the group's speech, but on its volume—the "manner" in which the individuals spoke. And the Supreme Court has long recognized that governments have a "substantial interest in protecting its citizens from unwelcome noise," especially when excessive volume disturbs "traditional public forums." *Ward*, 491 U.S. at 796 (quoting *City Council of L.A. v. Taxpayers for Vincent,* 466 U.S. 789, 806 (1984)). The effect of this order was the most modest possible. Somers could continue speaking in the same "channel of communication," and was not otherwise restricted in any way.

But instead of making the minor adjustment, Somers replied, "No." Officer Devine interpreted this response as a refusal to comply with his volume restriction and ordered Somers to exit the building. She did not, and continued to reply "no." It was only at this point that he arrested her. Devine Body Cam at 18:41:28-18:41:51. Officer Devine had lawful grounds to request that Somers leave the premises; any reasonable officer would agree given the validity of the volume restriction. And surely no rational officer would believe that Somers retained the right to remain in the school facility after Officer Devine

12

ordered her to leave. Thus, a reasonable officer could conclude that her confrontational refusal and continued resistance to a clear order created probable cause for the arrest.

Somers raises the concern that Officer Devine misinterpreted her reply, "No." That concern, however, is raised only in conclusory terms. *See* Reply Br. at 3. Moreover, differences in witness recollections do not *ipso facto* defeat qualified immunity. Such factual disputes inhere in the very nature of a case or controversy. But "inevitable confusion . . . need not signify a difference of triable fact." *Gooden*, 954 F.2d at 965. And here, the officer's interpretation of Summer's response was not only a reasonable one, but the most reasonable one. "No" means "not," as in not going to obey. And the repetition of the "no" in response to the request to leave the building dispels any lingering doubt as to plaintiff's resistance, if such there be. Thus, we need not even rely on the old chestnut that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Here the officer's perception of the reply, "No," was not a bad guess, but a very good one. *See Gooden*, 954 F.2d at 965 ("We are aware of no evidence, however, that the officers' mistaken perception—if in fact it was mistaken—was unreasonable."). And the plaintiff's direct disobedience to an order first to keep the noise down and then to leave the premises is fatal to her claim.

Because we find that an objectively reasonable officer could have found probable cause to arrest Somers, we hold that Officer Devine is entitled to qualified immunity on Counts III, IV, and VI. We turn now to Somers' excessive-force claims.

13

B.

In Count V, Somers raised excessive-force claims under both the Fourth and Fourteenth Amendments. We do not distinguish between these claims as they are functionally identical for the purposes of our analysis; both the Fourth and Fourteenth Amendments mandate the use of an objective reasonableness test. *See Lombardo v. City of St. Louis*, 594 U.S. 464, 466 n.2 (2021) ("Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.'" (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015))). In doing so we look to "the totality of the circumstances," at "the moment that the force is employed." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner,* 471 U.S. 1, 9 (1985)); *Henry*, 652 F.3d at 531.

The *Graham* inquiry is well-known. We do not judge an officer's use of force "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Rather, we assess a reasonable officer's perception of (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) whether the suspect is "actively resisting arrest or attempting to evade arrest by flight." *Id.* We may also consider "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force." *Kingsley*, 576 U.S. at 397. Specificity in illuminating the facts the officer confronts is particularly important because excessive-force claims often involve a "hazy legal backdrop" where the applicability of "relevant legal doctrine" is "difficult . . . to determine." *Mullenix v. Luna*, 577 U.S. 7, 12, 14 (2015);

14

*see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021). Indeed, qualified immunity is expressly designed to "protect officers from [this] sometimes 'hazy border between excessive and acceptable force.'" *Saucier*, 533 U.S. at 206 (quoting *Priester v. Riviera Beach*, 208 F.3d 919, 926-27 (11th Cir. 2000)).

In the present case, the use of force was minimal and was made necessary by Somers' resistance. With regard to the lobby incident, Somers refused to stand up, telling Officer Devine that he would "have to lift [her] out of this chair." Officer Devine then did so. Somers next refused to roll herself over onto her chest when instructed, so the officer again did so. He applied enough pressure on Somers' back to keep her still while handcuffing her, and he loosened up in under a minute. Devine Body Cam at 18:42:04-18:43:19. And at the courthouse, Officer Devine again merely followed Somers' own instructions to "forcibly put [the mask] on [her]." *Id.* at 23:39:48. He tugged at her jacket when she attempted to pull down the mask, and she brought herself to the ground purely through her attempts to pull away from Officer Devine. Viewed in their totality, these events are not an example of excessive force. They are an example of an appropriate, proportional response to an individual resisting lawful arrest and lawful orders to remain masked in accordance with Maryland law. And even when crimes are not "severe," we permit officers to apply the degree of force "necessary to overcome that resistance." *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017).

Finally, it is telling that Somers nowhere alleges any concrete physical injury. On the contrary, she admitted while in a holding cell that she was not injured during her interaction with Devine. Brown Body Cam at 19:11:27. We thus hold that Officer Devine's

15

use of force was objectively reasonable given the "totality of the circumstances," and that he is entitled to qualified immunity on Count V.

## III.

The unpleasant train of events here arose in the context of a local school board meeting. And we are not unaware of the tensions surrounding such proceedings. There are few obligations more important or more sensitive than that of shepherding the next generation into responsible adulthood. Indeed, "[n]o one should underestimate the vital role in a democracy that is played by those who guide and train our youth." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

We do not ask parents and taxpayers to lounge back and accept all the policies that a school board chooses to promulgate. Like any institution, school boards are not exempt from a vocally engaged environment. But embracing productive, even adversarial, discourse does not mean leaving school boards unguarded from the disruptive behavior which threatens their very mission. "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); *see Hulbert*, 70 F.4th at 733. School boards have a right to discharge their solemn duties with some modicum of order and peace.

Our decision does not seek to define the exact point at which healthy protest becomes unacceptable disruption. We simply acknowledge that an officer who makes

16

reasonable, content-neutral efforts to enable a school board to perform its critical democratic function is entitled to qualified immunity.

Plaintiff suggests that Officer Devine's efforts to lower the volume of her disruptive expression are the sign of a "police state." Oral Arg. at 35:44. This is nonsense. Police states do not request compliance with modest instructions delivered multiple times; they drag off the lawful without courtesy of comment. Police states do not tolerate the filing of suits against law-enforcement officers. Proof schemes and summary judgment presumptions are unknown to them. Somers had plenty of opportunity to either comply with Officer Devine's lawful order or voluntarily leave the premises. Her decision to instead resist brings with it necessary consequences, one being that the officer's actions here plainly entitle him to qualified immunity. For the foregoing reasons, the judgment is affirmed.

*AFFIRMED*

17