**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRENDA HOWERTON, Administratrix
of the Estate of Daryl Eugene
Howerton,
Plaintiff-Appellant,

v.

No. 98-2795

CHARLES C. FLETCHER, Individually
and in his official capacity; JOSE
EMILIO BLANCO, Individually and in
his official capacity; CITY OF
GREENSBORO,
Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-97-414-1)

Argued: March 2, 2000

Decided: May 12, 2000

Before WILKINS and LUTTIG, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Judge Wilkins and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Marvin Ray Sparrow, Durham, North Carolina, for
Appellant. Joseph Robert Beatty, HILL, EVANS, DUNCAN, JOR-

DAN & DAVIS, P.L.L.C., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Polly D. Sizemore, Joseph P. Gram, HILL, EVANS, DUNCAN, JORDAN & DAVIS, P.L.L.C., Greensboro, North Carolina, for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

A jury returned a verdict against plaintiff-appellant Brenda Howerton in her suit under 42 U.S.C. § 1983 against two members of the City of Greensboro police department, in which she alleged that the use of excessive force by the police officers caused her son's death. Howerton now challenges the district court's instruction that, in deciding whether the force used against her son was "excessive," the jury was not to consider the risk posed to third parties by the officers' actions. Concluding that the district court did not err in its instruction, we affirm.

I.

On September 8, 1994, Daryl Howerton, who was mentally disabled, was walking into a barber shop, wearing only a cap and sunglasses and carrying a knife, when two Greensboro, North Carolina police officers, appellees Charles Fletcher and Jose Blanco, arrived on the scene in response to a telephone call from an employee at a nearby business. As the officers exited their car, several people were leaving the barber shop, and one of these individuals told the officers that there was a naked man with a knife inside. According to the officers' testimony, Howerton began to approach a third party, Jamie Moore, who was standing just outside the barber shop. Perceiving that he was attempting to attack Moore, and after unsuccessfully trying to subdue him with mace, the officers shot and killed Howerton.**1**

_____
**1** Plaintiff's witnesses testified at trial that Howerton never actually advanced on or acted aggressively toward Moore. However, the jury was instructed that it could find the use of deadly force to be reasonable under the Fourth Amendment if such force was used to defend an officer

2

Howerton's mother filed this section 1983 action, alleging that the officers used excessive force, and that the city of Greensboro was deliberately indifferent in training its police officers as to issues regarding the use of deadly force against the mentally disabled. The district court granted summary judgment to the municipality on the deliberate indifference claim. The excessive force claim against the officers proceeded to trial.

During the trial jury's deliberations, the jury informed the court that eleven jurors had agreed on a verdict, but that one wanted to abstain. The next morning, the district court explained to the jury that abstention was impermissible. Roughly one hour later, the jury foreman submitted to the court a note that read:

> Could we have a clarification on the Greensboro Police Department definition of public safety as it pertains to their policy number 1.6.3, "use of force."

J.A. 93. The court was unsure of exactly what the jury meant to ask and, in an effort at clarification, the court asked the foreman if the jury meant the note to refer to official "disregard for public safety of other people in the area." J.A. 94. The foreman confirmed that the note was so intended, and the court instructed the jury that it was not to consider risks to persons other than Howerton:

> [I]n this case, you are not to consider in reaching your determination the public safety of other individuals. The only suit here is the determination of whether excessive force was used against the deceased or not used -- [ ] there was either

_____

or a third person from the imminent infliction of deadly force on that person. See J.A. 71 ("The law provides that an officer may use his firearm or other deadly force to defend himself or a third person from what he reasonably believes to be the . . . immediate/imminent use of deadly physical force."). We assume of course that the jury followed this instruction, and the appellants do not suggest otherwise. Given that the jury found in favor of the officers, the jury thus must have found that the use of deadly force by Howerton against either the officers or Moore was immediate or imminent at the time the officers opened fire on Howerton.

3

> excessive force used against the deceased, or there was not excessive force used against the deceased.
>
> The fact that other people or property may have been hit by bullets is not for your consideration in this matter. You will confine yourselves to a determination of the matter involving the deceased and the officers shooting.

J.A. 94-95. Fifteen minutes after the jury resumed its deliberations, it returned a verdict in favor of the officers.

Brenda Howerton now appeals, claiming that the district court's above-quoted instruction was in error.

II.

Howerton contends that, because a jury is to consider "the totality of the circumstances," Tennessee v. Garner, 471 U.S. 1, 8-9 (1985), in determining whether excessive force has been used, the district court erred in instructing the jury that it was not to consider risk to bystanders as one such "circumstance." Her claim is a novel one. The parties conceded at argument that they were unable to find a case in which such a claim was ever advanced, and such a claim has never been addressed by the Supreme Court or any Court of Appeals. While we do not dismiss the argument out of hand, upon reflection we reject the argument because we conclude that its premise, that the danger to which third persons are exposed is directly relevant to the question whether excessive force was employed against the plaintiff, is incorrect.

In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court articulated the framework within which excessive force claims are to be evaluated:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . . The validity of the claim must then be judged by reference to the specific constitutional standard which

4

> governs that right, rather than to some generalized"excessive force" standard.

Id. at 394. When, as here, the excessive force claim is asserted under the Fourth Amendment, the plaintiff in effect argues that his personal freedom of movement was unreasonably restrained by the official conduct. The question that must be resolved, therefore, is whether it was objectively reasonable to use the force that was used in order to affect that individual's seizure. See id. at 395-96. The resolution of this question turns upon the conduct of the plaintiff which prompted the attempted seizure in the first place, the amount of force employed to affect the seizure, and the justification for the particular force used.

As such, the question is not whether the officer acted reasonably vis-a-vis the world at large. Rather, the question is whether the officer acted reasonably as against the plaintiff. See Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) ("[A] section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else."). That inquiry is not dependent at all on whether the officer did or did not subject third parties to risk, or even on whether he employed unreasonable force against them. Third parties to an officer's employment of force may have available to them section 1983 causes of action against the officer for the force that was used indirectly against them, although such causes of action may generally be available under the Fourteenth Amendment, rather than the Fourth Amendment. Compare Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 794-97 (1st Cir. 1990), with Roach v. City of Fredericktown, 882 F.2d 294, 297 (8th Cir. 1989). But whether excessive force was employed against the principal excessive force plaintiff is in no way dependent upon the extent to which that force was or was not impermissibly used against third persons, or the extent to which third persons were or were not exposed to risk by the officer's employment of force.

Indeed, to recognize the risk posed to third parties by the official use of force as a component of the excessive force inquiry would be, in effect (though admittedly not in fact) to afford the section 1983 plaintiff standing to seek and obtain relief for the unreasonable use of force against third parties. Cf. Rakas v. Illinois, 439 U.S. 128, 140, 150 (1978) (holding that a defendant cannot assert the Fourth Amend-

5

ment's protection against unreasonable searches unless his own reasonable expectation of privacy was violated, regardless whether the search at issue violated some third person's reasonable expectation of privacy); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) ("[I]f, for example, the [police] department bans high-speed chases in order to save gas, or to protect bystanders, a suspect arrested after an unauthorized chase can't complain about the violation of a rule not intended for his benefit.").[2]

We would not permit an officer to defend against an excessive force allegation on the ground (even in part) that the force employed was reasonable because no one other than the plaintiff either sustained force or was otherwise exposed to risk as a result of the officer's action.[3] We see no more reason to permit the excessive force plaintiff to rely offensively on the harm or risk to third persons when attempting to prove that excessive force was used against him.

Although, as noted, the Supreme Court has never addressed the specific question we address herein, our holding finds full support in the guidance that the Court has provided with respect to excessive force claims. First, when the Court has identified the factors relevant to the excessive force inquiry, it has never mentioned any factor that could be understood to relate to the harm or risk to which third persons were exposed by police action. In Graham , for example, the Court provided the following (non-exhaustive) list of factors to be

_____

[2] We are mindful that, in Sacramento v. Lewis, 523 U.S. 833 (1998), the Supreme Court, in the course of discussing the substantive due process claim at issue there, noted that an officer's decision whether to engage in a high-speed automobile chase is an extremely difficult one because the officer must consider in a split-second a host of factors, including the risk that the chase would pose to bystanders. See id. at 853. However, the Court did not there hold (nor has it held elsewhere) that an officer's consideration of risk to bystanders amounts to a constitutional duty -- the derogation of which could amount to the violation of the constitutional rights of the suspect actionable under section 1983 -- as opposed to an ordinary aspect of the officer's job.

[3] Were it otherwise, the absence of bystanders could in a different case serve as a basis for excusing the increased use of force by officers in a situation in which they could otherwise use little force.

considered: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. Second, the Court's instructions regarding the determination whether a particular use of force is "reasonable" under the Fourth Amendment focus not on the nature of the force used, generally speaking, but on the extent to which the force used violated the constitutional rights of the specific section 1983 plaintiff before the court. See Garner, 471 U.S. at 8 ("To determine the constitutionality of a seizure `[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" (quoting United States v. Place, 462 U.S. 696, 703 (1983))) (emphasis added); Graham, 490 U.S. at 396. And third, the specific test announced by the Supreme Court for determining whether the use of deadly force, in particular, is constitutionally unreasonable, certainly does not take account of the risk that official action poses to third parties, and in fact leaves little or no room for the consideration of such:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Garner, 471 U.S. at 11-12; see also id . at 3 ("[Deadly] force may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.").**4**

_____

**4** Significantly, the Court has emphasized that the use of force by police officers in circumstances requiring them to make split-second judgments as to whether to use force cannot serve as a basis for section 1983 culpability under either the Eighth Amendment (in the case of prison riots) or the Fourteenth Amendment (in the case of high-speed automobile

7

For the foregoing reasons, we are persuaded that the risk posed to third parties by the official use of force is not to be considered in determining whether that use of force was excessive as against a particular section 1983 plaintiff. We thus conclude that the district court

_____

chases) if the officers were merely deliberately indifferent to the risk posed by the force used. See Lewis, 523 U.S. at 852-54 (1998). Rather, officers can be held culpable under section 1983 only if they applied force "maliciously and sadistically for the very purpose of causing harm," Whitely v. Albers 475 U.S. 312, 320-21 (1986) (quotation marks omitted) (citation omitted) (Eighth Amendment), or with "a purpose to cause harm," Lewis, 523 U.S. at 854 (Fourteenth Amendment). Relatedly, under the Fourth Amendment, a "seizure" cannot occur accidentally. Rather, a Fourth Amendment seizure occurs only where an officer intentionally restrains an individual's freedom of movement. See Brower v. County of Inyo, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); Apodaca v. Rio Arriba County Sheriff's Department, 905 F.2d 1445, 1447 (10th Cir. 1990) ("Only unreasonable intentional detentions violate the Constitution.").

In the case before us, Howerton does not allege that officers Fletcher and Blanco intended to harm third parties. Yet she contends that the jury below should have been instructed to consider the risk posed to third parties by the officers' actions. Thus, she necessarily believes (lest she concede the harmlessness of any error below) that, had the jury been so instructed, it would have returned a verdict in her favor. But to allow the officers to be held liable under section 1983 for their split-second decision to open fire when they believed that Howerton posed an imminent threat to Moore, based on the risk (no harm was actually inflicted on third parties here) that their decision imposed on third parties, would be, in effect, to adopt as the liability standard, with respect to risk posed to third parties in Fourth Amendment excessive force cases, the deliberate indifference standard rejected by the Supreme Court in the Eighth and Fourteenth Amendment contexts. Such would also have the perverse effect of allowing the requirement that the exertion of force amounting to a Fourth Amendment seizure be intentional to be satisfied by risk unintentionally imposed on third parties.

8

did not err in so instructing the jury in this case. **5** The judgment of the district court is, accordingly, affirmed.

AFFIRMED

_____

**5** Brenda Howerton also challenges the district court's grant of summary judgment to the defendant-appellee City of Greensboro on her claim that the city's municipal police training program was deliberately indifferent to circumstances in which force must be employed against the mentally disabled. Because we affirm the judgment below, entered pursuant to the jury's verdict, that Daryl Howerton was not subjected to excessive force, this municipal liability claim brought by Brenda Howerton must fail, as a municipality cannot be held liable under section 1983 for inadequate training where individuals subject to the training program at issue did not violate the plaintiff's constitutional rights. See Hinkle v. City of Clarksburg, 81 F.3d 416, 420-21 (4th Cir. 1996).

9