PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TIM BROCKINGTON,

   *Plaintiff-Appellee,*

v.

ANTWAN LAMONT BOYKINS,

   *Defendant-Appellant,*

and

BALTIMORE POLICE DEPARTMENT,

   *Defendant.*

No. 09-2308

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:08-cv-01713-CCB)

Argued: December 7, 2010

Decided: March 22, 2011

Before GREGORY, DAVIS, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Davis and Judge Wynn joined.

## COUNSEL

**ARGUED:** Barron Stroud, Jr., STROUD & PRIEST, LLC, Baltimore, Maryland, for Appellant. Eric Earl Murphy,

JONES DAY, Columbus, Ohio, for Appellee. **ON BRIEF:**
Joseph W. Clark, Katherine E. Stern, Mark R. Lentz, JONES
DAY, Washington, D.C., for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

   This 42 U.S.C. § 1983 case deals with whether a police
officer who used deadly force is entitled to qualified immu-
nity. Timothy Brockington, Plaintiff-Appellee, and Officer
Antwan Boykins, Defendant-Appellant, had a confrontation
that led to separate criminal and civil proceedings. In the
criminal proceedings, Brockington was convicted of kidnap-
ping Officer Boykins, but acquitted of possessing a gun dur-
ing that same incident. In the current civil proceedings,
Brockington alleges Officer Boykins used excessive, deadly
force in violation of his constitutional rights. Officer Boykins
moved to dismiss the complaint on the ground of qualified
immunity. The district court denied the motion. Because a
reasonable officer would have recognized that deadly force
was no longer needed after Brockington was injured and help-
less with his back on the ground, the judgment of the district
court is affirmed.

I.

   At the outset, we take judicial notice of Brockington's con-
viction in the Maryland Court of Special Appeals, which is a
matter of public record.\* *Papasan v. Allain*, 478 U.S. 265,

---

   \*Importantly, we do not resolve the issue of whether judicial notice may
be taken of the facts underlying the conviction. Unlike other circuits, we
have not laid out the metes and bounds of judicial notice and we leave for
another day the question of whether such facts — including facts essential
to the conviction — are properly before us on a motion to dismiss for the
truth of the matter asserted, or whether such consideration is barred by the
rule against hearsay. *See Wright & Graham*, *supra*, at § 5106.4 (noting
that court documents are considered hearsay except, *inter alia*, when they
are findings of fact).

298 (1986); *see also Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence 2d* § 5106.4 (2005) (court may properly take judicial notice of final convictions). As is the case for the complaint itself, we construe the conviction in the light most favorable to the appellee. *Papasan*, 478 U.S. at 298.

After a jury trial, Brockington was convicted of kidnapping, conspiracy to kidnap, carjacking, and robbery, but acquitted of all gun-related offenses. Brockington subsequently filed a *pro se* complaint against the Baltimore Police Department ("BPD") and Boykins alleging claims under 42 U.S.C. § 1983 for violations of Brockington's rights under the Fourth and Fourteenth Amendments of the Constitution. The district court thereafter granted a motion to appoint counsel to represent Brockington. Brockington's counsel requested leave to file a Second Amended Complaint ("SAC"). The district court granted permission to do so. The court also denied Boykins' motion to dismiss on the doctrine of qualified immunity in a one-sentence order that contained no reasoning. The denial of qualified immunity is an immediately appealable order. *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

The SAC alleges various crucial facts important to a motion to dismiss. According to the complaint, on or about July 5, 2005, after the initial crimes had been committed, Brockington and Boykins confronted each other on the backyard steps of a vacant house at 1123 Myrtle Avenue. Boykins fired his handgun at least twice at Brockington when Brockington was approximately four feet away on the steps. The first shot hit Brockington's left hand, almost severing his pinky from his hand. The second shot hit Brockington's upper abdomen and caused Brockington to fall off the stairs onto the cement landing below. Brockington was unable to get up or otherwise defend himself. As he lay on his back, Boykins stood directly over him and fired at least six shots at close range. Brockington did nothing to defend himself but raise his hands and sway from side to side to protect his face. After

shooting Brockington a total of nine times, Boykins fled the scene. At no point in time was Brockington armed throughout the confrontation. As a result of the incident, Brockington spent three weeks on life support, is paralyzed, and is a paraplegic.

## II.

We review *de novo* the decision of the lower court to deny a motion to dismiss pursuant to Federal Rule 12(b)(6), recognizing that dismissal is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to "state a claim to relief that is plausible on its face." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996). One such defense is that of qualified immunity. *Jenkins*, 119 F.3d at 1159.

"Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 306 (4th Cir. 2006) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) (internal quotation marks omitted). Officials will receive immunity unless the § 1983 claim satisfies a two-prong test: (1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was "clearly established" such that a reasonable person would have known his acts or omissions violated that right. *Id.*; *see*

*also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009) (setting up this two-pronged framework).

## III.

In determining whether Brockington's complaint satisfies the two-prong test articulated above, we must evaluate the reasonableness of the officer's use of deadly force under a multifactor analysis set forth in *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). *Graham* governs our analysis of seizures alleged to have been effected in violation of the Fourth Amendment, and more specifically situations where excessive force is employed. 490 U.S. at 399; *see also Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (barring excessive force in effecting seizures). *Graham* specifies that whether force is excessive or not is based on "objective reasonableness" under the circumstances "without regard to [the officer's] underlying intent or motivation." 490 U.S. at 390, 397. "In assessing whether an officer's actions were objectively reasonable, 'we weigh the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005) (*quoting Buchanan*, 325 F.3d at 527) (internal punctuation omitted). "The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by 'the amount of force employed to [e]ffect the seizure.'" *Id.* (*citing Howerton v. Fletcher*, 213 F.3d 171, 173 (4th Cir. 2000)). "The extent of the plaintiff's injuries is also a relevant consideration." *Id.* (*citing Buchanan*, 325 F.3d at 527.). "Several factors are considered in assessing the governmental interests at stake, including the 'severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer [ ] or others, and whether he . . . actively resisted arrest or attempted to evade arrest by flight.'" *Id.* (*citing Graham*, 490 U.S. at 396). "Because 'police officers are often forced to make split-second judgments — in circumstances that are

tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." *Waterman v. Batton*, 393 F.3d 471, 476-77 (4th Cir. 2005) (*citing Graham*, 490 U.S. at 396-97).

Brockington conceded at oral argument that the initial use of deadly force to subdue him was reasonable. Nevertheless, he argues that Boykins used excessive force in shooting him multiple times once he was already immobilized. Boykins responds that he had probable cause to act because he reasonably believed his life was in danger. *See Ralph v. Peppersack*, 335 F.2d 128, 132 (4th Cir. 1964) (probable cause must be evaluated by looking at circumstances as they actually faced officer, not as they are in theory). But whether or not Boykins had probable cause to detain Brockington is tangential to the question of deadly force. There is no indication that deadly force was necessary or reasonable once Brockington was initially shot, thrown to the ground by the force of the bullets, and wounded. *See Tennessee v. Garner*, 471 U.S. 1, 9-11 (1985) ("[t]he intrusiveness of a seizure by means of deadly force is unmatched" but may be deployed if "the suspect poses a threat of serious physical harm, either to the officer or to others."). Furthermore, precedent suggests that it is possible to parse the sequence of events as they occur; while a totality of circumstances analysis still remains good law, if events occur in a series they may be analyzed as such. *See Waterman*, 393 F.3d 471, 477. Drawing all inferences in favor of Brockington from the allegations in the SAC, there was a clear break in the sequence of events. Brockington's injuries may have been evident to Boykins after Brockington fell off the porch onto the concrete backyard below. Further, it is alleged that Boykins stood above Brockington execution style while fully discharging his clip so that gun powder residue got on Brockington's hands while Brockington waved away Boykins, further evincing the excessive nature of the force used. Whether or not Boykins thought his life was still in jeopardy is a fact that will be educed through discovery since

it is unclear from the record before us. Again drawing all reasonable inferences in favor of Brockington, he was unarmed. Rather than shoot Brockington as he lay helpless on the ground, a reasonable police officer would have asked him to surrender, called for backup or an ambulance, or retreated, depending on the facts that emerge through discovery.

Boykins cites two unpublished Fourth Circuit cases for the proposition that it is permissible to continue shooting once a suspect is down. *See Rodgers v. Smith*, 188 Fed. Appx. 175 (4th Cir. 2006) (unpublished) (shooting took place in a number of seconds after the suspect had fallen to the ground but videotape of incident suggests he still had a weapon); *Pethel v. West Virginia State Police*, 359 Fed. Appx. 390 (4th Cir. 2009) (per curiam) (unpublished) (shooting kidnapper who may or may not have fallen to floor after first shot was justified). Most basically, neither of these has precedential weight. *See Local R. 32.1* (citation of unpublished dispositions disfavored except where necessary to establish res judicata, estoppel, or the law of the case). Moreover, *Waterman*, the case cited by Brockington, holds otherwise. 393 F.3d at 481 ("force justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."). In any case, here there is one important difference. In drawing all inferences in favor of Brockington, he was unarmed and this fact was apparent.

Boykins argues that under *Graham* there needs to be a clear bright-line separating allowable actions from forbidden ones. But Boykins also conceded at oral argument that thirty-three shots would be unjustified, as would twenty-nine, or even nineteen. It is invariably arbitrary when we undertake to draw a clean line denominating the precise number of shots allowed. It is enough for us to say that on these facts, six is too many.

The second prong of the analysis, whether or not the right was clearly established, presents a closer question. Boykins

argues that the right was not clearly established because, by virtue of the fact there were multiple shots, it was necessarily a gray area when further shooting became prohibited. *See Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."). Furthermore, Boykins argues, *Waterman* was not a clearly established precedent in the Fourth Circuit as of the time the shooting occurred. *Waterman* involved a high-speed chase of a suspect that ended in his death. In analyzing the chase, the *Waterman* Court broke it down into segments based on the location of the car relative to the police officers who shot the suspect. *Id.* at 477. Boykins claims that *Waterman* was at odds with the "totality of circumstances" perspective articulated in *Graham*.

Importantly, it is not required that the exact conduct has been found unconstitutional in a previous case. *E.g. Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances."). Indeed, it is just common sense that continuing to shoot someone who is already incapacitated is not justified under these circumstances. Nevertheless, the Supreme Court did decide in *Tennessee v. Garner* that deadly force was not generally justified against a suspect who did not pose an immediate threat as Brockington did not if all facts are construed in his favor. In *Waterman*, the Court solidified this position. *Waterman* thus remains and was at the time these events took place controlling precedent in this Circuit.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.