**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 23-1107**

———————

KRISTEE ANN BOYLE, Mother of Peyton Alexander Ham and as representative
of his estate,

            Plaintiff - Appellant,

    v.

JOSEPH CHARLES AZZARI, JR.,

            Defendants - Appellees.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
George Jarrod Hazel, District Judge.  (8:22-cv-00884-GJH)

———————

Argued:  May 10, 2024                              Decided:  July 9, 2024

———————

Before GREGORY and HARRIS, Circuit Judges, and David A. FABER, Senior United
States District Judge for the Southern District of West Virginia, sitting by designation.

———————

Reversed, vacated, and remanded by published opinion.  Judge Gregory wrote the opinion,
in which Judge Harris joined.  Judge Faber wrote a dissenting opinion.

———————

**ARGUED:**  Christopher Longmore, DUGAN MCKISSICK & LONGMORE LLC,
Lexington Park, Maryland, for Appellant.  Phillip M. Pickus, OFFICE OF THE
ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.  **ON
BRIEF:**  Anthony G. Brown, Attorney General, Baltimore, Maryland, Amy E. Hott,
Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF
MARYLAND, Pikesville, Maryland, for Appellee.

———————

GREGORY, Circuit Judge:

This case concerns the tragic events that led to sixteen-year-old Peyton Alexander Ham's death.  Kristee Ann Boyle, Ham's mother and the personal representative of his estate, appeals the district court's denial of her request for additional time for discovery, and its grant of State Trooper Joseph Charles Azzari Jr.'s pre-discovery motion for summary judgment on her claim for excessive force asserted under 42 U.S.C. § 1983, and claims for assault, battery, and intentional infliction of emotional distress asserted under Maryland state law.  In rendering its decision, the court below determined that this case did not require discovery because the evidence Boyle sought could not create a triable issue of fact regarding her claims and held that Azzari was entitled to summary judgment because his actions were reasonable even under Boyle's proffered account of the relevant events.

On review, we conclude that discoverable evidence could create a material dispute of fact and thus the district court abused its discretion in denying Boyle an opportunity to conduct discovery.  Accordingly, without assessing the court's determination on the merits, we reverse its denial of Boyle's motion for discovery, vacate its grant of summary judgment to Azzari as premature, and remand for additional proceedings.

I.

On April 13, 2021, State Trooper Joseph Charles Azzari Jr. was working a day shift at the Leonardtown Barracks.*   Early that afternoon, Azzari received a county-wide

---

\* At this stage in the litigation, we describe the facts as alleged by Boyle in her complaint.  J.A. 5-15.

2

dispatch reporting a suspicious man with a gun in a residential neighborhood. Dispatch reported the man's location as "23260 Hollywood Road, Leonardtown, M.D. 20650" which was less than one-tenth of a mile from the Barracks. Azzari responded to the dispatch and traveled to the reported location without activating his lights or sirens.

Azzari arrived at "23270 Hollywood Road, Leonardtown, M.D. 20650," the house next door to the reported location. Still without activating his police lights or sirens, Azzari drove his vehicle into the driveway of 23270 Hollywood Road which was in a "U-shape" that wrapped around the back of the house. He then stopped his car in the driveway, behind the house and out of view of Hollywood Road.

Upon exiting the car, Azzari saw Peyton Alexander Ham who, by that time, had walked onto the property at 23270 Hollywood Road. Azzari believed Ham was holding a gun in his right hand and that Ham pointed the gun at him. The object in Ham's hand, however, was not a real gun but instead a replica of a Sig Sauer. Unaware of that fact at the time, Azzari fired at least eleven rounds from his own gun at Ham. At least one of those shots struck Ham. Azzari then reloaded his gun with another full magazine of ammunition. He yelled and screamed at Ham while moving around the area, at least once getting close enough to Ham to touch him. As he was moving about the area, Azzari noticed that Ham had a knife in his possession and an injury to his right arm.

At some point at least 57 seconds after Azzari shot Ham, he stopped approximately fifteen to twenty-five feet away from Ham who was on his knees. Azzari faced Ham from that distance with his gun drawn and pointed at Ham. Azzari then fired four additional shots at Ham, striking him multiple times. Ham collapsed from his knees and dropped face

3

forward to the ground.  He eventually succumbed to his injuries caused by the gunshot wounds.  Azzari did not activate his lights or sirens, or the in-car camera in his patrol vehicle at any time prior to or during the encounter.

II.

Kristee Ann Boyle, Ham's mother and the personal representative of his estate, filed suit asserting claims pursuant to 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth and Fourteenth Amendments, and under state law for assault, battery, intentional infliction of emotional distress, and pain and suffering.

Azzari moved to dismiss Boyle's claims, or alternatively for summary judgment.  In a declaration attached to his motion, Azzari declared that Ham pointed a gun directly at him, refused commands to lie down on the ground after the first round of shots, stated "I want to die" several times, and took a step toward him holding a knife. J.A. 41–43.  Relying primarily on those facts, Azzari contended that his uses of force were reasonable under the circumstances and that he was entitled to federal and state immunity.

Boyle opposed Azzari's motion contending that the material disputes of fact regarding Ham's location and state when Azzari shot him precluded summary judgment. Boyle also submitted a Rule 56(d) declaration stating that she needed discovery to obtain evidence to properly oppose Azzari's motion.  She attached a written statement to her opposition brief from Michelle Mills, a neighbor who witnessed a portion of Ham's and Azzari's encounter from her window.  J.A. 104.  Mills, who was "shaking" at the time she gave her statement, stated that she saw Ham "on his knees with his hands up" with "blood

4

dripping from his right side/arm" in a "dazed" state. *Id*. One unclear sentence in her statement reads "The cop told the boy to drop a shiny object was pulled out of boys pocket" The word "knife" appears above and between the words "shiny" and "object" in that sentence in the statement. *Id*. In the lines following that ambiguous statement, Mills stated that she, and another eyewitness "yelled for [Ham] to drop the knife" and Ham "looked as though he was trying to stand" before Azzari shot him multiple times and Ham fell to the ground. *Id*.

The district court considered both parties' briefing and the exhibits attached thereto and assessed the parties' motions without a hearing. The court acknowledged that under Rule 56(d) pre-discovery summary judgment should be denied where the nonmovant has not had the opportunity to discover information essential to her claim but found that Boyle was not entitled to Rule 56(d) relief because, it said, she failed to show how discovery could create a genuine issue of material fact. In the district court's view, Boyle's excessive force arguments centered around whether Ham "made it to his feet with the knife" and "was approaching" Azzari or "remained on his knees." *Boyle v. Azzari*, 2023 WL 144577, at *4 (D. Md. Jan. 10, 2023). The court determined that dispute was irrelevant because it was undisputed that Ham had a knife approximately fifteen to twenty-five feet away from Azzari immediately before Azzari fired the second round of shots and "approximately a minute" after Azzari believed Ham was pointing a gun at him. *Id*. Under those circumstances, the court said, even if Ham was on his knees, it was reasonable for Azzari to believe that Ham posed an immediate threat of serious injury or death, and that was "enough to justify [Azzari's] use of deadly force." *Id*.

5

Based on its findings, the court denied Boyle's Rule 56(d) motion and granted Azzari summary judgment on Boyle's excessive force claim and state law claims for assault, battery, and intentional infliction of emotional distress. The court also dismissed Boyle's pain and suffering claim because it had granted summary judgment on all other claims. The court did not conduct a full qualified immunity analysis but noted that the first step of such an analysis is identical to the reasonableness assessment it conducted to determine whether Azzari violated Ham's constitutional rights. Boyle timely appealed and we have jurisdiction over the district court's final decision pursuant to 28 U.S.C. § 1291.

## III.

This Court reviews a district court's denial of a request for additional time for discovery for abuse of discretion. *Pledger v. Lynch*, 5 F.4th 511, 524 (4th Cir. 2021). Under that standard, we review the court's legal conclusions de novo, and its factual findings for clear error. *Id*. If we determine that the district court abused its discretion in granting summary judgment before discovery, we need not assess the court's summary judgment decision on the merits before vacating the judgment and remanding for further proceedings. *Id.* at 525.

## IV.

Summary judgment should only be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Consistent with that general rule, Federal Rule of Civil Procedure 56(d) allows a district court faced with a motion for summary judgment to defer considering the motion, deny the motion, allow time for

6

discovery, or issue any other appropriate order upon a showing by the nonmovant that it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). We have advised that relief under Rule 56(d) should be "liberally granted to protect nonmoving parties from premature summary judgment motions." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014) (internal quotation marks omitted). We have even mandated that courts in this Circuit refuse to consider the motion where the nonmoving party has not had an opportunity to obtain evidence necessary to support its position. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).

Here, the district court was aware that Boyle did not have an opportunity to obtain necessary evidence to oppose Azzari's motion which he filed before the parties engaged in any discovery. She explicitly informed the court of the importance of discovery to her case and indicated that she had been denied access to Ham's autopsy report, a critical piece of evidence, at least three times before the court decided the motion. *See e.g.* J.A. 106. Seeking the opportunity to depose Azzari about what occurred, she also highlighted conflicting statements from Azzari about Ham's movements immediately before he was fatally shot. J.A. 69; *compare* J.A. 78 ("I had discharged my weapon as the subject grasped a knife, attempting to stand up."), *with* J.A. 42–43 ("He stood up with the knife in his hand and took a step towards me."). The district court was therefore well aware of the insufficiency of the summary judgment record and should have allowed time for discovery before assessing Azzari's motion. *See Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023) (holding that the district court abused its discretion by granting summary judgment before discovery where "the district court was on fair notice of potential disputes as to the

7

sufficiency of the summary judgment record"). This is doubly so given that "'special difficulties can arise during summary judgment' in use of deadly force cases" where a defendant has killed a key witness who can refute the defendant's account. *Knibbs v. Momphard*, 30 F.4th 200, 216 (4th Cir. 2022) (quoting *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022)). Courts must take care to consider "*all* contradictory evidence," *id.*, which necessarily cautions against granting summary judgment before plaintiffs challenging the use of deadly force have the opportunity to conduct discovery.

The district court also should have ordered the parties to proceed to discovery because the record presents a potential material dispute of fact. Azzari claims in his summary judgment declaration that Ham "stood up with [a] knife in his hand and took a step towards him" when he shot Ham. J.A. 42–43. Mills, an eyewitness, stated that Ham "looked as though he was trying to stand" when Azzari shot him. J.A. 104. Similarly, at one point in his interview with the Maryland State Police six days after the shooting, Azzari stated that Ham was "attempting to stand up" when he fired. J.A. 78. These accounts of the moments immediately preceding the use of force, the core issue in every excessive force case, directly conflict.

The district court acknowledged this dispute but determined that it did not create a triable issue of fact because, it said, Azzari's use of force was justified even assuming that Ham "was on his knees, never stood up, and never took a step towards [Azzari]" as Boyle maintained. *Boyle v. Azzari*, 2023 WL 144577, at *4. According to the court, immediately before Azzari fired the fatal shots, and approximately one minute after Azzari believed that Ham pointed a gun at him, Azzari knew that Ham was "armed with a knife" between fifteen

8

and twenty-five feet away from him.  *Id*.  The court concluded that Azzari's belief that "[Ham] was dangerous, armed with a knife immediately after pointing a firearm at him, and within approximately twenty feet of [him wa]s enough to justify his use of deadly force."  *Id*.  That conclusion was erroneous.

To decide whether Azarri used excessive force when he fatally shot Ham, one must consider "'the totality of the circumstances' based on the 'information available to the [officer] immediately prior to and at the very moment [he] fired the fatal shots.'"  *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023) (quoting *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 582 (4th Cir. 2017)).  When faced with a Fourth Amendment claim involving the use of deadly force, "the question comes down to whether the circumstances presented an immediate threat that justified the officer's resort to lethal force as objectively reasonable."  *Id.* at 531.  Deadly force is only permitted if a reasonable officer would have had "probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others."  *Id.* (quoting *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013)).  And we have previously held that an officer may not use force against an incapacitated person "unable to get up or otherwise defend himself," even if the person is armed.  *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 669–70 (4th Cir. 2020) (quoting *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011)).

As noted above, Boyle stated in her declaration that she had been repeatedly denied access to Ham's autopsy report.  That document could indicate that Ham was kneeling on the ground unable to get up at the time Azzari fatally shot him.  It could also indicate that the extent of Ham's injuries from the first round of shots would have made it apparent to a

9

reasonable officer that at the moment the second round began, Ham was unable to present any threat. Given the importance of Ham's condition and capacity after the first round of shots, information in the autopsy report could render Azzari's belief that Ham continued to pose a threat to him unreasonable. The court therefore erred in concluding that the evidence Boyle seeks could not create a triable issue of fact.

Clarification of the distance between Ham and Azzari before the second round of shots could also create a triable issue of fact under our precedent. The district court determined that Ham had a knife approximately fifteen to twenty-five feet away from Azzari immediately before Azzari fatally shot him. However, contrary to the implications of the court's conclusion, there could be a difference between the threats posed at the top and bottom of the distance range accepted by the court. In other words, even if a reasonable officer would have perceived a threat of serious harm from someone holding a knife fifteen feet away, this does not establish that the officer would perceive any threat, much less a serious one, if the threat was moved an additional ten feet away. *See Wilson v. Prince George's Cnty., Maryland*, 893 F.3d 213, 220 (4th Cir. 2018) (concluding that a jury could determine that a suspect armed with a knife twenty feet away did not pose an immediate threat to the officer or others where estimates of the distance between the officer and the suspect at the time deadly force was used ranged between eight and twenty feet). Discovery may clarify the distance between Ham and Azzari at the time Azzari fired the fatal shots and provide additional color regarding whether that use of force was reasonable given Azzari's training and the circumstances. *See Hupp v. Cook*, 931 F.3d 307, 323 (4th Cir.

10

2019) (considering the officer's training in assessing the totality of the circumstances to determine whether his use of force was reasonable).

V.

In sum, the district court erred in denying Boyle's motion for discovery because it was on notice that Boyle did not have an opportunity to obtain evidence necessary to oppose Azzari's motion for summary judgment. It also erred in concluding that the autopsy report could not create a triable issue of fact. To the contrary, discovery of evidence regarding Ham's position, state, and distance from Azzari at the time Azzari fired the fatal shots could create a material dispute of fact regarding whether Azzari reasonably used force at that time. Given that reality, the district court's assessment of Azzari's pre-discovery summary judgment motion based on the underdeveloped record available to it was premature. Accordingly, we reverse the court's denial of Boyle's Rule 56(d) motion, vacate its grant of Azzari's summary judgment motion, and remand the case for additional proceedings.

*REVERSED, VACATED, AND REMANDED*

FABER, District Judge, dissenting:

In this excessive force case, the majority holds that the district court abused its discretion in denying Boyle's Rule 56(d) motion for discovery. Because I believe the undisputed material facts in the record establish Azzari's entitlement to qualified immunity, I would deny the motion for discovery and affirm the decision of the district court.

I.

"The doctrine of qualified immunity shields [law enforcement] officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 12 (2021) (cleaned up). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Supreme Court laid out a two-step process for resolving the qualified immunity claims of government officials. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. *See id.* Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Courts may exercise discretion in deciding which of the two *Saucier* prongs "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"That means that we may grant qualified immunity on the ground that the purported right was not clearly established without resolving the 'often more difficult question whether the purported right exists at all.'" *Atkinson v. Godfrey*, 100 F.4th 498, 504 (4th Cir. 2024) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Stanton v. Elliott*, 25 F.4th Cir. 227, 233 (4th Cir. 2022) (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (cleaned up).

Whether a right is clearly established is a question of law. *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020). "[T]o determine whether a right was clearly established, we first look to cases from the Supreme Court, this Court, or the highest court of the state in which the action arose." *Id.*

"While qualified immunity provides a defense to liability, it is also intended to free officials from litigation concerns and disruptive discovery." *Atkinson v. Godfrey*, 100 F.4th

13

498, 504 (4th Cir. 2024). The Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation" given that the immunity exists "to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (cleaned up); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly-established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery" because "even such pretrial matters as discovery are to be avoided if possible[.]"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until the threshold immunity question is resolved, discovery should not be allowed.").

Therefore, this court has instructed lower courts to "give a qualified immunity defense at the dismissal stage of litigation a hard look [or] it risks unwittingly the forfeiture of some protections afforded by that defense." *McVey v. Stacy*, 157 F.3d 271, 275 (4th Cir. 1998); *see also Putney v. Likin*, 656 F. App'x 632, 641 (4th Cir. 2016) (A "district court must, at the outset, address the defendants' claim of qualified immunity, because such immunity is designed to protect the defendants from both discovery and trial.") (Niemeyer J., concurring in part, dissenting in part, and concurring in the judgment). "It is therefore incumbent on the courts to review the immunity defense critically at an early stage of the proceedings to determine the legal questions of whether the plaintiff has asserted a violation of a constitutional right and, if so, whether the constitutional right allegedly violated was clearly established at the time the defendant acted." *McVey*, 157 F.3d at 275; *see also Oliver v. Roquet*, 858 F.3d 180, 188 (3rd Cir. 2017) ("[Q]ualified immunity may

14

be implicitly denied when a government official otherwise entitled to immunity is nonetheless subjected to 'the burdens of such *pretrial* matters as discovery.'") (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (internal quotation marks omitted)).

The district court in this case gave Azzari's assertion of qualified immunity the required "hard look" and determined that the discovery sought would not overcome the defense. I agree.

## II.

To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (cleaned up). "Rule 56(d) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of unlawful conduct." *Estate of Rahim v. Doe*, 51 F.4th 402, 411 n.11 (1st Cir. 2022).[1] "Even where certain facts are disputed, courts must assess whether a plaintiff's allegations - - or here, [Boyle]'s allegations as modified by the current undisputed evidence

---

[1] Other courts have held that a motion under Rule 56(d), formerly Rule 56(f), should be subject to higher scrutiny when the defense of qualified immunity has been raised. *See, e.g., Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) ("In qualified immunity cases, the Rule 56(f) balancing is done with a thumb on the side of the scale weighing against discovery."); *Jones v. City and Cty. of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988) ("[A] district court's rule 56(f) discretion is further restricted when a summary judgment motion based on qualified immunity is at issue" because [l]iberal application of rule 56(f) should not be allowed to subvert the goals of *Harlow* and its progeny."). Although this court has not gone as far as these courts, it has nevertheless recognized the importance of deciding qualified immunity as early as possible. *See McVey*, 157 F.3d at 275.

15

in the summary judgment record - - make out a claim sufficient to overcome qualified immunity before denying a motion for summary judgment and authorizing discovery." *Id.* at 411.

Boyle, represented by counsel, submitted a declaration pursuant to Rule 56(d) outlining her inability to obtain a copy of Ham's autopsy report. J.A. 133. That declaration does not explain how the autopsy report would create a triable issue of fact. Nor does it make any other specific requests for discovery, although it does refer to her brief filed in opposition of defendant's motion to dismiss or, in the alternative, for summary judgment. That brief states that the autopsy report is needed to show Ham was on his knees when Azzari fired the second round of shots. J.A. 69.

The brief also mentions a "photo or other visual depiction of the location where the events [ ] took place" that was used during the recorded statement of Azzari taken on April 19, 2021. J.A. 68. According to Boyle, that photograph would help her determine the distance between Azzari and Ham when the second round of shots was fired. Boyle's brief further states a need to depose Azzari regarding the "conflicting statements" he has given as to whether Ham "took a step" toward him. J.A. 69. She also cites a need for any "camera footage or drone video footage" and "in-car video footage" of any other law enforcement at the scene. J.A. 70. Boyle does not provide a basis for believing that any such footage exists, however. And, finally, she claims a need to obtain "Azzari's training other than firearms training," "records of any complaints" against Azzari, disciplinary and psychological records for Azzari, and any records of alcohol or drug testing for Azzari. *Id.* The only reason Boyle gives for needing these materials is that "they could be directly

16

relevant to the material facts of this case and the credibility of [Azzari]." *Id.* This type of burdensome discovery is what qualified immunity is meant to prevent when the material facts are before the court prior to further discovery.

In denying Boyle's Rule 56(d) motion, the district court specifically considered what it termed a "dispute" over whether Ham "made it to his feet with the knife and was approaching [Azzari] . . . or remained on his knees." J.A. 156. It also considered the dispute regarding the distance between Ham and Azzari when the second round of shots was fired. J.A. 157 n.4. However, the mere existence of a factual dispute "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

To be sure, there is a dispute as to whether Ham ever stood before the second round of shots was fired. But there is no dispute he was trying to stand and brandishing a knife as he did so. And the district court accepted Boyle's allegation regarding the distance between Ham and Azzari when the later shots were fired. The court concluded that these disputes were not material. I agree.

Boyle's Rule 56(d) request is unlikely to lead to a genuine issue of material fact because it is highly speculative. I disagree with the majority that the autopsy report might show that Ham was "incapacitated" at the time the second round of shots was fired. The evidence of record shows just the opposite. After being shot at least once, Ham did not lie down or otherwise surrender. Instead, he pulled a knife, said "I want to die," refused to drop the knife, and attempted to move toward Azzari. All of this happened in less than a

17

minute.  Azzari's account in these respects is supported by other evidence already in the record:  (1) the knife found near Ham's body; (2) the photograph showing Ham on his knees; and (3) Mills's statement to police.  Clearly, Ham was not incapacitated, nor would it appear to a reasonable officer that he was.  *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (noting that firing "a second round of shots" would be unreasonable if "an initial round had clearly incapacitated" a person or if a person "had clearly given himself up").

Neither Ham's autopsy report nor the other discovery Boyle sought will change the following undisputed facts:  (1) that Ham pointed what appeared to be a gun at Azzari; (2) after being shot, Ham dropped to his knees and pulled a knife; (3) that he refused to drop the knife; and (4) attempted to move toward Azzari from approximately 15 to 20 feet.  Both Azzari and Mills agreed that Ham was attempting to stand.  J.A. 77, 90, and 104.

Finally, this is not a case where Boyle is necessarily entitled to discovery because Ham was fatally shot.  *See Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195-96 (4th Cir. 2006).  While a court must "be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence[,]" it need not "be especially critical of officer testimony" in deadly force cases.  *Stanton*, 25 F.4th at 234.  The district court did not rely solely on Azzari's accounts of what transpired.  In addition to the Azzari statements, there was also the statement of an eyewitness (Michelle Mills) and photographs, including one showing the knife found near Ham's body.  Both Mills and the photographs largely corroborate Azzari.  "Speculation alone cannot create a factual dispute."  *Stanton*, 25 F.4th at 234.

For these reasons, I find no abuse of discretion in the district court's decision to deny Boyle's request for discovery.

## III.

I do not believe that Azzari used excessive force in violation of the Fourth Amendment by firing the second round of shots where it was undisputed that (1) less than a minute after Ham pointed what appeared to be a gun at him; (2) Ham pulled a knife after being shot at least once; (3) refused to drop the knife despite repeated requests to do so; and (4) from a kneeling position, Ham attempted to stand and move towards Azzari from a distance of approximately 20 yards. Reasonableness under the Fourth Amendment "is evaluated from the perspective of the officer on the scene, not through the more leisurely lens of hindsight." *Abney v. Coe*, 493 F.3d 412, 416 (4th Cir. 2007). A reasonable officer acting under these circumstances would have concluded that Ham continued to be a threat to Azzari's safety. Therefore, Azzari's use of force was justified.

However, even if Azzari had violated Ham's Fourth Amendment rights when he fired the second round of shots, that right was not clearly established at the time of the shooting. No one has identified a case that would inform Azzari that firing the second round of shots in the circumstances presented violated clearly established law.[2] This is not a case where Ham merely possessed a weapon. Therefore, Boyle cannot rely on the line

---

[2] The district court did not conduct a full qualified immunity analysis and never reached the second prong of the *Saucier* test. However, we may affirm on any ground found in the record. *See Attkisson v. Holder*, 925 F.3d 606, 622-23 n.7 (4th Cir. 2019).

of cases holding that "mere possession" of a weapon does not justify the use of deadly force. *See Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013).

In the district court, Boyle argued that *Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019), established the right at issue. However, this case is distinguishable from *Harris*. In *Harris*, when the second and third shots were fired, Harris alleged that he was "lying on the ground, wounded and unarmed" and not "showing any further resistance." *Id.* at 280. In this case, Ham was not lying on the ground or otherwise subdued and he was armed with a knife.

This case is not close enough to *Wilson v. Prince George's County, Maryland*, 893 F.3d 213 (4th Cir. 2018), to have put Azzari on notice that his actions violated the law. In *Wilson*, officers responded to a 911 call that a woman's ex-boyfriend (Wilson) had broken into her home and assaulted her. *Id.* at 217. A law enforcement officer shot Wilson when he began to move toward him with a knife. *Id.* at 217-18. Although the *Wilson* court found that the right was not clearly established in that case, it emphasized that, following its opinion, officers were on notice that shooting a person violates that person's Fourth Amendment right to be free from excessive force when (1) the person was a burglary and battery suspect (2) the person "was standing about 20 feet from the officer holding a knife, inflicting harm on himself and stumbling, but not threatening others or making sudden movements; and (3) [the person] was refusing to obey the officer's repeated commands to drop the knife at the time he was shot." *Id.* at 224. Unlike Wilson, Ham had threatened Azzari in the first instance by pointing what appeared to be a workable gun at him and then by pulling a knife and attempting to move toward him.

20

Finally, the cases of *Estate of Jones v. City of Martinsburg*, 961 F.3d 661 (4th Cir. 2020), and *Brockington v. Boykins*, 637 F.3d 503 (4th Cir. 2011), are not helpful. In *Estate of Jones*, this court found that police officers were not entitled to qualified immunity where they shot Jones who, armed with a knife "tucked into his sleeve," had been "tased four times, hit in the brachial plexus, kicked, and placed in a choke hold" and "[i]n his final moments . . . lay on the ground" because a reasonable jury could find Jones had been secured and/or incapacitated immediately before the police saw his knife, drew back, and fired at him 22 times. *Estate of Jones*, 961 F.3d at 663-65.

In *Brockington*, the court held that a "reasonable officer would have recognized that deadly force was no longer needed after Brockington was injured and helpless with his back on the ground," even though an initial use of deadly force to subdue him was reasonable. *Brockington*, 637 F.3d at 504-05, 507. Also significant to the court was the fact that "[a]t no point in time was Brockington armed throughout the confrontation." *Id.* at 505. *Estate of Jones* and *Brockington* are distinguishable because the evidence, even when viewed in the light most favorable to Boyle, did not show that Ham was either subdued or incapacitated. Furthermore, Brockington, unlike Ham, was unarmed throughout his encounter with law enforcement.

Under the undisputed *material* facts of this case, Azzari has not violated any clearly established right. No amount of discovery can change this.

## IV.

Based upon the facts in the record that are not disputed, Azzari is entitled to qualified immunity. The discovery Boyle seeks would not create a disputed issue of material fact.

21

Furthermore, no amount of discovery will overcome the lack of clearly established law that would have put Azzari on notice that his actions violated the Fourth Amendment. Therefore, the district court did not abuse its discretion in denying Boyle's request for discovery. I respectfully dissent from the majority opinion holding otherwise.